# Exhibit 2

## Memorandum of Law in Support of Defendants' Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 (filed with the J.P.M.L. on May 8, 2017)

**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE AMERICAN CIVIL LIBERTIES UNION FREEDOM OF INFORMATION ACT REQUESTS REGARDING EXECUTIVE ORDER 13769** | **MDL Docket No. ______** |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407**

---

CHAD A. READLER
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

MATTHEW J. BERNS
CHETAN A. PATIL
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
Tel: (202) 616-8016
Fax: (202) 616-8470
Email: matthew.j.berns@usdoj.gov

*Counsel for Defendants*
*U.S. Department of Homeland Security and*
*U.S. Customs and Border Protection*

## INTRODUCTION

This litigation consists of thirteen actions pending in thirteen different districts involving parallel Freedom of Information Act ("FOIA") requests submitted by affiliates of the American Civil Liberties Union ("ACLU") to U.S. Customs and Border Protection ("CBP"), a component of the U.S. Department of Homeland Security ("DHS"). The only plaintiffs in these Related Actions are affiliates of the ACLU, which coordinated the filing of the Related Actions and the underlying FOIA requests. The only defendants are CBP and DHS.

Each FOIA request at issue asks CBP to search one of its field offices (and corresponding airports and/or ports of entry) for identical or similar categories of records about the implementation of Executive Order 13769, "Protecting the Nation from Terrorist Entry Into the United States," 82 Fed. Reg. 8977 (Jan. 27, 2017), and to make those records public. The claims asserted in the different complaints also are identical or similar. Each complaint alleges that the plaintiff(s) submitted a FOIA request to CBP on February 2, 2017, that more than twenty business days have passed since CBP received the request, and that CBP has not yet released responsive records. None of the Related Actions presents any non-FOIA claim. The legality of Executive Order 13769 is not at issue in any of the Related Actions, nor is the legality of Executive Order 13780, "Protecting the Nation from Terrorist Entry Into the United States," 82 Fed. Reg. 13209 (Mar. 9, 2017), which replaced Executive Order 13769.[1]

Transfer and consolidation of the Related Actions is appropriate because consolidation will alleviate the inefficiencies posed by litigating substantially similar cases in thirteen different jurisdictions. Actions may be transferred to any district for coordinated or consolidated pretrial

[1] Pursuant to this Panel's Rule 6.1(b)(iv), copies of all complaints and docket sheets for all Related Actions are submitted herewith. Each complaint includes among its exhibits the FOIA request(s) at issue in that action.

proceedings where civil actions pending in different districts involve "one or more common questions of fact" and where doing so will serve the "convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. The Related Actions satisfy these requirements. CBP's headquarters in the District of Columbia is coordinating the agency's search for records responsive to all of the FOIA requests at issue as well as the agency's processing of responsive records for potential release. Disputes about the adequacy of the agency's search, its application of the FOIA's statutory exemptions from disclosure, and the pace of its releases will involve common questions of fact. These issues would be addressed most efficiently by a single district judge presiding over consolidated or coordinated proceedings.

This Panel has previously recognized the appropriateness of Multidistrict Litigation ("MDL") treatment of FOIA actions in similar circumstances. *See In re Freedom Magazine/IRS FOIA Litig.*, No. 910 (J.P.M.L. Feb. 12, 1992) ("*Freedom Magazine* Transfer Order"); *In re Church of Scientology Flag Serv. Org./IRS FOIA Litig.*, No. 892 (J.P.M.L. Sept. 4, 1991) ("*Church of Scientology* Transfer Order"). For the reasons set forth below, MDL treatment is also appropriate for the Related Cases, and the District Court for the District of Columbia is the most appropriate transferee forum.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The ACLU's "Coordinated" FOIA Requests

On February 2, 2017, the ACLU, the ACLU Foundation, and dozens of their state and local affiliates submitted a total of eighteen FOIA requests to CBP, each seeking records about the implementation of Executive Order 13769, "Protecting the Nation from Terrorist Entry Into the United States," 82 Fed. Reg. 8977 (Jan. 27, 2017).

The FOIA request submitted by the national ACLU organizations and their District of Columbia affiliates is addressed to CBP's national FOIA Officer in Washington, DC, and requests the following categories and sub-categories of records:

1. Records created on or after January 27, 2017 concerning CBP's interpretation, enforcement, and implementation of the following directives and orders:
    a. President Trump's Executive Order, signed on January 27, 2017 and titled "Protecting the Nation From Foreign Terrorist Entry Into the United States";
    b. Any guidance "provided to DHS field personnel shortly" after President Trump signed the Executive Order, as referenced in CBP's online FAQ;
    c. Associate Director of Field Operations for U.S. Citizenship and Immigration Services Daniel M. Renaud's email, sent at 11:12 A.M. on January 27, 2017, instructing DHS employees that they could not adjudicate any immigration claims from the seven targeted countries;
    d. Judge Donnelly's Decision and Order granting an Emergency Motion for Stay of Removal, issued in the Eastern District of New York on January 28, 2017, including records related to CBP's efforts to comply with the court's oral order requiring prompt production of a list of all class members detained by CBP;
    e. Judge Brinkema's Temporary Restraining Order, issued in the Eastern District of Virginia on January 28, 2017;
    f. Judge Zilly's Order Granting Emergency Motion for Stay of Removal, issued in the Western District of Washington on January 28, 2017;
    g. Judge Burroughs' Temporary Restraining Order, issued in the District of Massachusetts on January 29, 2017;
    h. Judge Gee's Order granting an Amended *Ex Parte* Application for Temporary Restraining Order, issued in the Central District of California on January 29, 2017;
    i. Assurances from the U.S. Attorney's Office for the Eastern District of Pennsylvania that all individuals detained at Philadelphia International Airport under the Executive Order would be admitted to the United States and released from custody on Sunday, January 29, 2017;
    j. DHS's "Response to Recent Litigation" statement, issued on January 29, 2017;
    k. DHS Secretary John Kelly's "Statement on the Entry of Lawful Permanent Residents Into the United States," issued on January 29, 2017;
    l. DHS's "Statement on Compliance with Court Orders and the President's Executive Order," issued on January 29, 2017; and
    m. Any other judicial order or executive directive issued regarding the Executive Order on or after January 27, 2017.
2. Records concerning the number of individuals who were detained or subjected to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver at U.S. airports pursuant to the Executive Order, including:
    a. The total number of individuals who remain detained or subject to secondary screening, extending questioning, an enforcement examination, or consideration

for a waiver at U.S. airports both as of the date of this request and as of the date on which this request is processed; and

a. The total number of individuals who have been detained or subjected to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver for any length of time at U.S. airports since January 27, 2017, including the number of individuals who have been
   i. released,
   ii. transferred into immigration detention, or
   iii. removed from the United States;

3. Records concerning the number of individuals who have been removed from the United States from January 27, 2017 to date pursuant to the Executive Order;
4. Records concerning the number of individuals who arrived at U.S. airports from January 27, 2017 to date with valid visas or green cards who subsequently agreed voluntarily to return to a foreign country;
5. Records containing the “guidance” that was “provided to DHS field personnel shortly” after President Trump signed the Executive Order.

*See* Exhibit 17, FOIA Request from the ACLU, ACLU Foundation, ACLU of the District of Columbia, and ACLU Fund of the District of Columbia at 1, 4–7 (Feb. 2, 2017) (footnotes omitted). The request specifies that, “[t]hrough this request, the ACLU seeks information regarding CBP Headquarters’ interpretation and enforcement of the Executive Order.” *Id.* at 7. The request asks CBP to send the responsive records to Mitra Ebadolahi, an attorney for the ACLU Border Litigation Project based in San Diego. *Id.* at 13.

Each of the seventeen other FOIA requests submitted on February 2 identifies one or more ACLU affiliates as the requester, but, like the national ACLU’s request, asks CBP to send the responsive records to Ms. Ebadolahi, instead of to the requester(s). These seventeen ACLU affiliate requests seek the same categories of records as the national ACLU’s request, except that where the national ACLU’s request seeks information regarding CBP’s implementation of the Executive Order at *all* international airports in the United States, each affiliate request seeks information regarding CBP’s implementation of the Executive Order at one or more “Local International Airports” (with that term defined in each request to include one or more airports

within the purview of a different CBP field office). Thus, each of the affiliate requests submitted on February 2 seeks the following categories of records:

1. Records created on or after January 27, 2017 concerning CBP's interpretation, enforcement, and implementation of the following at [the Local International Airport(s)]:
    a. President Trump's Executive Order, signed on January 27, 2017 and titled 'Protecting the Nation From Foreign Terrorist Entry Into the United States';
    b. Any guidance 'provided to DHS field personnel shortly' after President Trump signed the Executive Order, as referenced in CBP's online FAQ;
    c. Associate Director of Field Operations for U.S. Citizenship and Immigration Services Daniel M. Renaud's email, sent at 11:12 A.M. on January 27, 2017, instructing DHS employees that they could not adjudicate any immigration claims from the seven targeted countries;
    d. Judge Donnelly's Decision and Order granting an Emergency Motion for Stay of Removal, issued in the Eastern District of New York on January 28, 2017, including records related to CBP's efforts to comply with the court's oral order requiring prompt production of a list of all class members detained by CBP;
    e. Judge Brinkema's Temporary Restraining Order, issued in the Eastern District of Virginia on January 28, 2017;
    f. Judge Zilly's Order Granting Emergency Motion for Stay of Removal, issued in the Western District of Washington on January 28, 2017;
    g. Judge Burroughs' Temporary Restraining Order, issued in the District of Massachusetts on January 29, 2017;
    h. Judge Gee's Order granting an Amended *Ex Parte* Application for Temporary Restraining Order, issued in the Central District of California on January 29, 2017;
    i. Assurances from the U.S. Attorney's Office for the Eastern District of Pennsylvania that all individuals detained at Philadelphia International Airport under the Executive Order would be admitted to the United States and released from custody on Sunday, January 29, 2017;
    j. DHS's 'Response to Recent Litigation' statement, issued on January 29, 2017;
    k. DHS Secretary John Kelly's 'Statement on the Entry of Lawful Permanent Residents Into the United States,' issued on January 29, 2017;
    l. DHS's 'Statement on Compliance with Court Orders and the President's Executive Order,' issued on January 29, 2017; and
    m. Any other judicial order or executive directive issued regarding the Executive Order on or after January 27, 2017.
2. Records concerning the number of individuals who were detained or subjected to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver at [the Local International Airports(s)] pursuant to the Executive Order, including:
    a. The total number of individuals who remain detained or subject to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver at [the Local International Airport(s)] both as of the date of this request and as of the date on which this request is processed; and

b. The total number of individuals who have been detained or subjected to secondary screening, extending questioning, an enforcement examination, or consideration for a waiver for any length of time at [the Local International Airport(s)] since January 27, 2017, including the number of individuals who have been
   i. released,
   ii. transferred into immigration detention, or
   iii. removed from the United States;

3. Records concerning the number of individuals who have been removed from [the Local International Airport(s)] from January 27, 2017 to date pursuant to the Executive Order;
4. Records concerning the number of individuals who arrived at [the Local International Airport(s)] from January 27, 2017 to date with valid visas or green cards who subsequently agreed voluntarily to return;
5. Records containing the 'guidance' that was 'provided to DHS field personnel shortly' after President Trump signed the Executive Order.

*See* Exhibits 1–13 (FOIA requests included as exhibits to complaints) (footnotes omitted); Exhibits 14–16 (FOIA requests not yet in litigation) (footnotes omitted).

Each of the affiliate requests is addressed both to CBP's national FOIA Officer in Washington, DC, and to the particular CBP field office covered by the request. Each of the affiliate requests specifies that it does not seek information held in the records of CBP headquarters (unlike the national ACLU's request) but instead seeks records held by CBP employees and offices at the Local International Airport(s), and the corresponding Port of Entry Office(s) and Regional Field Operations Office.[2]

It was not necessary for Plaintiffs to submit a separate FOIA request for each field office. Had the national ACLU, or any of its affiliates, or all of them together, sent CBP headquarters a single FOIA request asking the agency to search the same field offices for the same records covered by their multiple requests, CBP would have processed that request and, if necessary, defended its processing of that request in a single lawsuit.

[2] The litigation in the Eastern District of Michigan involves two FOIA requests: one dated February 2, 2017, and one dated February 10, 2017. The later request includes four additional sub-parts in part one of the request, and asks the agency to search for records relating to four ports of entry not covered by the earlier request. *See* Exhibit 10, Complaint, *ACLU of Mich. v. DHS, et al.*, No. 5:17-cv-11149 (E.D. Mich.) (filed Apr. 12, 2017).

Unsurprisingly, the eighteen nearly identical FOIA requests submitted on February 2 were not the product of independent action by the ACLU's various affiliates. As the national ACLU stated in a press release (issued with a "WASHINGTON" dateline) the filing of the FOIA requests was "coordinated." ACLU, Press Release, *ACLU Files Demands for Documents on Implementation of Trump's Muslim Ban* (Feb. 2, 2017), https://www.aclu.org/news/aclu-files-demands-documents-implementation-trumps-muslim-ban.

**B. The ACLU's Thirteen "Coordinated" Lawsuits**

On April 12, 2017, before CBP completed its search for responsive records, the national ACLU issued a press release (again with a "WASHINGTON" dateline) announcing that "[ACLU] affiliates across the country filed 13 [FOIA] lawsuits today," all seeking to compel the release of records responsive to FOIA requests submitted by ACLU affiliates on February 2.[3] Plaintiffs in these Related Actions also issued their own press releases announcing their participation in what they described as the "coordinated lawsuits."[4]

The Related Actions are now pending in every corner of the continental United States, and in many districts between. As reflected in the attached Schedule of Actions, this litigation is underway in the District of Maine, the Southern District of California, the Southern District of Florida, the Western District of Washington, the District of Arizona, the Eastern District of

---

[3] The Related Action venued in the Northern District of California was in fact initiated two days earlier. *See* Exhibit 8, Complaint, *ACLU of N. Cal.*, *et al. v. DHS*, *et al.*, No. 4:17-cv-01970 (N.D. Cal.) (filed Apr. 10, 2017).

[4] *See, e.g.*, *ACLU of Delaware Files Lawsuit Demanding Documents on Implementation of Trump Muslim Ban* (Apr. 12, 2017), https://www.aclu-de.org/news/aclu-of-delaware-demands-documents-on-implementation-of-trump-muslim-ban/2017/04/12; *ACLU of Arizona Files Lawsuit Demanding Documents on Implementation of Trump Muslim Ban* (Apr. 12, 2017), https://www.acluaz.org/en/press-releases/aclu-arizona-files-lawsuit-demanding-documents-implementation-trump-muslim-ban; *ACLU of Florida Files Lawsuit Demanding Documents on Implementation of Trump Muslim Ban* (Apr. 12, 2017), https://aclufl.org/2017/04/12/aclu-of-florida-files-lawsuit-demanding-documents-on-implementation-of-trump-muslim-ban.

Virginia, the Northern District of Illinois, the Northern District of California, the District of Oregon, the Eastern District of Michigan, the Southern District of Texas, the Northern District of Georgia, and the Central District of California.

These thirteen coordinated lawsuits involve fourteen of the eighteen coordinated FOIA requests submitted by the ACLU and its affiliates to CBP on February 2, 2017. The litigation in the Southern District of Florida involves two of those FOIA requests (those seeking records from the Miami and Tampa Field Offices of CBP). Each of the eleven other Related Actions involves one of the coordinated FOIA requests submitted on February 2, 2017.

Four of the coordinated FOIA requests submitted by the ACLU and its affiliates on February 2 have not yet resulted in litigation (including the request submitted by the national ACLU organizations and their District of Columbia affiliates for records from CBP headquarters). These FOIA requests are attached as Exhibits 14 through 17. If those FOIA requests result in additional litigation, each additional lawsuit would constitute a potential tag-along action.[5]

Defendants in each Related Action are CBP and DHS. Plaintiffs are one or more ACLU affiliates. Defendants have not yet responded to any of the Complaints.

---

[5] Defendants are aware of a number of other FOIA actions in which the plaintiffs explicitly seek certain categories of records relating to Executive Order 13769. *See James Madison Project, et al. v. Dep't of Homeland Sec.*, No. 1:17-cv-00388 (D.D.C.) (filed Mar. 3, 2017); *James Madison Project, et al. v. Dep't of Justice, et al.*, No. 1:17-cv-00390 (D.D.C.) (filed Mar. 3, 2017); *N.Y. Times Co., et al. v. U.S. Dep't of Justice*, No. 1:17-cv-01946 (S.D.N.Y.) (filed Mar. 16, 2017); *Currier v. Dep't of Homeland Sec., et al.*, No. 3:17-cv-01799 (N.D. Cal.) (filed Mar. 31, 2017); *Protect Democracy Project v. Dep't of Justice*, No. 1:17-cv-00815 (D.D.C.) (filed May 2, 2017); *Protect Democracy Project v. Office of Mgmt. & Budget*, No. 1:17-cv-00814 (D.D.C.) (filed May 2, 2017). More pending FOIA actions may relate indirectly to the Executive Order. Defendants do not presently seek centralization of any of these other FOIA actions.

The filing of additional FOIA actions seeking records relating to Executive Order 13769 is possible. DHS and CBP estimate, based on a preliminary assessment, that they have received over 100 FOIA requests relating to the Executive Order.

## ARGUMENT

### I. TRANSFER IS APPROPRIATE BECAUSE THE RELATED ACTIONS INVOLVE COMMON QUESTIONS OF FACT

This Panel has recognized that centralization under Section 1407 is appropriate when a federal agency is sued in multiple actions arising from "parallel" FOIA requests. In *Freedom Magazine*, the Panel centralized eight FOIA actions filed by the magazine, which had sued in eight different districts to compel the release of records responsive to "parallel [FOIA] requests made to national, regional, and district offices of the IRS." *Freedom Magazine* Transfer Order at 1. The Panel found that the actions involved common questions of fact because "i) all actions involve[d] identically worded underlying FOIA requests seeking information relating to summary records of federal tax assessments, and ii) the IRS forwarded all such requests to its national office for coordinated treatment." *Id.*

In *Church of Scientology*, the Panel ordered the centralization of thirty FOIA actions pending in five districts. *See Church of Scientology* Transfer Order at 1. Each of the FOIA requests and lawsuits at issue was filed by a different individual or couple. *See id.*; *see also id.* at Schedule A. Nonetheless, the Panel found that the actions presented common factual questions "because all plaintiffs seek, *inter alia*, records relating to treatment of Church of Scientology members by the IRS generally, and the adequacy of the search conducted by the IRS for these records is therefore a potential issue in each action." *Id.* at 1–2.

The same considerations apply equally here. The FOIA requests underlying the Related Actions not only relate to the same general subject matter (as in *Church of Scientology*) but are identically or nearly identically worded (as in *Freedom Magazine*), and the agency's national office is coordinating the agency's processing of the requests for records (as in *Freedom Magazine*). Specifically, CBP headquarters already has coordinated an initial search for records

related to the implementation of Executive Order 13769, and is evaluating whether to expand the scope of that search. Should any additional searching need to be conducted, CBP headquarters intends to either conduct the searching directly (through agency-wide systems) or, if necessary, provide CBP field offices with uniform guidance regarding which custodians' records should be searched and what keywords should be used to locate potentially responsive local records, among other issues. In responding to the FOIA requests at issue here, CBP headquarters also will continue to coordinate the agency's review of potentially responsive records for responsiveness, facilitate any interagency consultation that must take place before records are released, and make decisions regarding the application of FOIA's exemptions to responsive agency records.

In light of the manner in which CBP headquarters is coordinating the search, common questions of fact will inform any judicial inquiry into the adequacy of the search. Moreover, because the adequacy of an agency's search depends on the search methodology, not the results, *see, e.g.*, *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983), common questions of fact will be at issue regardless of whether searches of different field offices locate different records.

Common questions of fact also will inform any review of CBP's determinations to withhold information from disclosure pursuant to the FOIA's statutory exemptions. In some instances, different field offices may locate different copies of a particular document (*e.g.*, each field office may possess a different copy of a single e-mail sent from CBP headquarters to an e-mail distribution list for field office directors). In other instances, records located at different field offices may appropriately be grouped together for purposes of determining whether their

contents must be released, because the reasons for CBP's decision to withhold information apply equally to the entire group of records.

Plaintiffs in the Related Actions cannot prevent consolidation or coordination pursuant to 28 U.S.C. § 1407 on the grounds that they submitted their coordinated FOIA requests to different field offices and filed their coordinated FOIA requests and lawsuits under the names of different affiliates of their national organization. These artifices do not preclude a finding that the Related Actions present common questions of fact regarding search adequacy and the agency's application of the statutory exemptions from disclosure. *See Freedom Magazine* Transfer Order at 1–2 (finding common factual questions where one FOIA request sought records from the agency's national office and other FOIA requests sought records from various regional and district offices); *Church of Scientology* Transfer Order at 1–2 (finding common factual questions where different plaintiffs sought records relating to the same general subject matter).

## II. TRANSFER OF THE RELATED ACTIONS SERVES THE CONVENIENCE OF THE PARTIES AND WITNESSES AND ENSURES THE JUST AND EFFICIENT CONDUCT OF THE ACTIONS

Transfer of the Related Actions for coordinated or consolidated pretrial proceedings "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

Centralization would promote the just and expeditious resolution of all Related Actions, and would conserve the resources of the federal judiciary. *See Freedom Magazine* Transfer Order at 1 (finding centralization of FOIA actions "necessary in order to . . . conserve the resources of . . . the judiciary"); *Church of Scientology* Transfer Order at 2 (same). As discussed above, the same (or, at least, very similar) issues regarding search adequacy and application of the FOIA's exemptions from disclosure likely will arise, if at all, in multiple or all Related Actions. These issues would most efficiently be resolved through summary judgment briefing

before a single district judge, not multiple rounds of nearly identical briefing before up to thirteen district judges.

Although discovery is rare in FOIA cases, Plaintiffs may seek discovery. Centralization is therefore necessary to eliminate the prospect of duplicative discovery and discovery disputes. *See Freedom Magazine* Transfer Order at 1 (finding centralization of FOIA actions "necessary in order to eliminate duplicative discovery"); *Church of Scientology* Transfer Order at 2 (same).

Absent consolidation, there is a possibility not only of duplicative pretrial proceedings but also of inconsistent rulings on issues including search adequacy and the agency's application of the statutory exemptions from disclosure. *See Freedom Magazine* Transfer Order at 1; *Church of Scientology* Transfer Order at 2. Centralization would avoid potential inconsistency and render unnecessary potential litigation about the preclusive effect that a ruling against one ACLU affiliate might have in the other Related Actions. *See generally Taylor v. Sturgell*, 553 U.S. 880 (2008) (addressing the circumstances in which a judgment against a plaintiff in one FOIA action may bind a different plaintiff in another FOIA action).

In addition, Defendants anticipate that Plaintiffs will seek court orders requiring CBP to complete its search and/or production by a particular date, or to release a minimum number of pages or records per month on a rolling basis. Having as many as thirteen district judges issue different scheduling orders would inject arbitrariness and unpredictability into the CBP's efforts to process Plaintiffs' FOIA requests in an efficient and orderly manner, and to do so without undermining CBP's ability to process other FOIA requests, many of which have been pending longer than Plaintiffs'.[6] Centralization, by contrast, would allow a single judge to set an

---

[6] Because agencies have limited resources available for processing FOIA requests, court orders that require an agency to dedicate resources to one FOIA request necessarily reduce the resources available to process other requests. CBP, for example, employs a total of twenty-five

appropriate schedule without having to guess what competing obligations judges presiding over other Related Actions might subsequently impose on the CBP FOIA staff who are working on the ACLU's coordinated FOIA requests. *Cf. In re Mosaid Tech. Inc., Patent Litig.*, 283 F. Supp. 2d 1359, 1360 (J.P.M.L. 2003) (observing that "transfer under Section 1407 has the benefit of placing . . . actions . . . before a single judge who can structure pretrial proceedings to consider all parties' legitimate needs").

Centralization also will conserve the resources of counsel for the parties. *See Freedom Magazine* Transfer Order at 1; *Church of Scientology* Transfer Order at 2. If the Related Actions are consolidated, Department of Justice staffing of the consolidated litigation can be leaner. And centralization should permit Plaintiffs to reduce the extraordinary number of ACLU lawyers and outside counsel involved in the litigation. The names of forty-four attorneys appear in the signature blocks on the Complaints in the Related Actions, including twenty-five ACLU attorneys and nineteen outside counsel. (Plaintiffs have added more counsel since the filing of the Complaints, and at least one outside counsel and one ACLU attorney, Ms. Ebadolahi, are appearing in multiple actions.) Plaintiffs in FOIA actions often are represented by one or two attorneys, and Defendants see no reason why this litigation would require more if the proceedings were consolidated. As a general matter, the Government has an interest in reducing the cost of litigating these FOIA actions because FOIA fee-shifting provisions require the taxpayer to fund fee awards to plaintiffs who substantially prevail. *See* 5 U.S.C. § 552(a)(4)(E).

---

dedicated FOIA processors, twelve at headquarters and thirteen in the field. CBP received 9,434 new FOIA requests in March 2017, closed/processed 6,799 FOIA requests during that month, and had 16,236 open FOIA requests pending at the end of the month. *See* DHS-CBP, Monthly Reporting: Requests Processed Under FOIA Only, Reporting Period (Mar. 2017 reporting period), https://www.cbp.gov/sites/default/files/assets/documents/2017-Apr/FOIA%20Monthly%20Reporting%20Form%20%2803.2017%29.pdf.

Finally, transfer and consolidation are appropriate because the Related Actions are in the early stages of litigation. The Complaints in the Related Actions were filed on April 10 and April 12, 2017. Answers and dispositive motions have not been filed in any of the Related Actions. As a result, no party has expended significant resources litigating in any jurisdiction, and no prejudice or inconvenience will result from transfer and consolidation at this time.

## III. TRANSFER TO THE DISTRICT COURT FOR THE DISTRICT OF COLUMBIA IS APPROPRIATE

Many considerations make transfer to the District Court for the District of Columbia appropriate. Several of these considerations are equally applicable to all multidistrict FOIA litigation, while others are specific to these Related Actions.

First, in Section 552(a)(4)(B) of the FOIA, Congress specifically designated the District Court for the District of Columbia as a proper venue for all FOIA actions. *See* 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."). Consequently, it is the only district in the country in which Plaintiffs could have filed all of the Related Actions in the first instance.

"Section 552(a)(4)(B) reflects an express congressional design to render the District of Columbia an all-purpose forum in FOIA cases." *In re Scott*, 709 F.2d 717, 720 (D.C. Cir. 1983). The Congress's decision to give the District of Columbia special treatment in FOIA cases reflects its judgment that "the courts in that district have gained substantial expertise in this area" and that "defense of litigation in the District of Columbia would be more convenient from the

government's vantage point" because that is where most federal agencies are headquartered and where attorneys in the Justice Department are located. S. Rep. No. 93-854, at 13 (1974).[7]

Further, in light of its experience handling a significant portion of the nation's FOIA actions, the District Court for the District of Columbia has adopted Local Rules that make FOIA litigation more efficient by exempting FOIA actions from procedural requirements applicable to other civil actions. *See* D.D.C. L. Civ. R. 16.3(b)(9); D.D.C. L. Civ. R. 16.5(c)(1); D.D.C. L. Civ. R. 26.2(a)(9); *see also* Comment to D.D.C. L. Civ. R. 16.3(b) (explaining that the Court has added FOIA actions to the list of exempt categories of cases "because they are actions that typically do not require discovery or actions in which an initial disclosure requirement would not make sense"). Transfer to the District of Columbia therefore would facilitate the most efficient resolution of the Related Actions.

Considerations specific to the instant litigation also favor the District Court for the District of Columbia as the transferee forum. Defendants DHS and CBP are headquartered in Washington, DC, and the Department of Justice attorneys who are handling the Related Actions are located there. All of the FOIA requests at issue were addressed to Defendant CBP's headquarters in Washington, DC, as well as to a CBP field office. The processing of the requests,

[7] District courts in other jurisdictions have cited the FOIA expertise of the federal courts in the District of Columbia as supporting transfer of FOIA actions to the District Court for the District of Columbia. *See, e.g.*, *Friends of the River v. U.S. Army Corps of Eng'rs*, No. 16-cv-5052, 2016 WL 6873467, at *3 (N.D. Cal. Nov. 22, 2016) (transferring FOIA action to the District of Columbia, "which Congress has expressly established as a place of proper venue for all FOIA cases, regardless of where the records at issue are located"); *Gaylor v. U.S. Dep't of Justice*, No. 05-cv-414, 2006 WL 1644681 (D.N.H. June 14, 2006) (transferring FOIA action to the District of Columbia because the "District Court for the District of Columbia has special expertise in FOIA matters"); *cf. Coastal Corp. v. Dep't of Energy*, 496 F. Supp. 57 (D. Del. 1980) (recognizing that the D.C. Circuit has "considerable experience and expertise in FOIA").

including the search for responsive records, is being coordinated by CBP's headquarters, and responsive records ultimately will be released by that office.[8]

Plaintiffs in the Related Actions are affiliates of the ACLU, which is incorporated in Washington, DC, and maintains one of its national offices there. *Cf. In re Polar Bear Endangered Species Act Listing & 4(d) Rule Litigation*, 588 F. Supp. 2d 1376, 1378 (J.P.M.L. 2008) (deeming the District Court for the District of Columbia an appropriate transferee forum where "most plaintiffs and intervenors, which are national advocacy groups, have a presence in the district"). The national ACLU announced the filing of Plaintiffs' coordinated FOIA requests and coordinated lawsuits in press releases with a "WASHINGTON" dateline. One of the coordinated FOIA requests not yet in litigation (but potentially the subject of a tag-along action) seeks records located at CBP headquarters in Washington, DC, and CBP is coordinating its processing of that request with its processing of the requests seeking records located at the agency's field offices. All of Plaintiffs' FOIA requests cite case law from the Court of Appeals

---

[8] Discovery is generally unavailable in FOIA actions, and when permitted, is ordinarily quite limited. *See, e.g.*, *Heily v. Dep't of Commerce*, 69 F. App'x 171, 174 (4th Cir. 2003) (per curiam) ("It is well-established that discovery may be greatly restricted in FOIA cases. When the courts have permitted discovery in FOIA cases, it generally is limited to the scope of the agency's search and its indexing and classification procedures." (internal citation omitted)); *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam) ("The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of the FOIA have been met."); *Van Mechelen v. Dep't of the Interior*, No. 05-5393, 2005 WL 3007121, at *5 (W.D. Wash. Nov. 9, 2005) ("[D]iscovery is not ordinarily part of a FOIA case."); *Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003) ("Discovery is generally unavailable in FOIA actions."); *Hardy v. Dep't of Defense*, No. 99-523, 2001 WL 3435945, at *4 (D. Ariz. Aug. 27, 2001) ("[D]iscovery is not favored in FOIA cases."). In the unlikely event that discovery is authorized in these Related Actions, Defendants anticipate that CBP witnesses would be located in Washington, DC, while Plaintiffs would not have any witnesses of their own.

for the District of Columbia Circuit and the District Court for the District of Columbia in support of their requests for fee waivers and expedited processing.

All of these circumstances together warrant transfer to the District Court for the District of Columbia, notwithstanding the Panel's ordinary reluctance to select as a transferee forum a district in which no related action is pending. *See Freedom Magazine* Transfer Order at 2 (transferring multidistrict FOIA litigation to the District Court for the District of Columbia, although no related action was pending there, because the agency's national office in the District of Columbia was in charge of coordinating the agency's response to the underlying FOIA requests and because one of the underlying FOIA requests sought records located at the national office).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Related Actions be transferred for consolidated or coordinated pretrial proceedings in the United States District Court for the District of Columbia.

Case: Pending No. 28 Document 1-15 Filed 05/08/17 Page 19 of 19

Dated: May 8, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

/s/ Matthew J. Berns
MATTHEW J. BERNS
CHETAN A. PATIL
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
Tel: (202) 616-8016
Fax: (202) 616-8470
Email: matthew.j.berns@usdoj.gov

*Counsel for Defendants*
*U.S. Department of Homeland Security and*
*U.S. Customs and Border Protection*