Thomas R. Burke (State Bar No. 141930)
thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA  94111
Telephone:  (415) 276-6500
Facsimile:  (415) 276-6599

Linda Lye (State Bar No. 215584)
llye@aclunc.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA  94111
Telephone:  (415) 621-2493

Mateo Caballero (*admission pro hac vice forthcoming*)
mcaballero@acluhawaii.org
AMERICAN CIVIL LIBERTIES UNION OF HAWAI'I FOUNDATION
P.O. Box 3410
Honolulu, HI  96801
Telephone:  (808) 522-5908

Leah Farrell (*admission pro hac vice forthcoming*)
lfarrell@acluutah.org
AMERICAN CIVIL LIBERTIES UNION OF UTAH FOUNDATION
355 North 300 West
Salt Lake City, UT  84103
Telephone:  (801) 521-9862

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO-OAKLAND DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, AMERICAN CIVIL LIBERTIES UNION OF HAWAI'I, AND AMERICAN CIVIL LIBERTIES UNION OF UTAH,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY and U.S. CUSTOMS AND BORDER PROTECTION,<br><br>Defendants. | Case No. 4:17-cv-01970-SBA<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS** |

Plaintiffs the American Civil Liberties Union of Northern California, American Civil Liberties Union of Hawai'i, and American Civil Liberties Union of Utah (collectively, "Plaintiffs" or the "ACLU") respectfully submits this Opposition to the Motion to Stay Proceedings filed by Defendants U.S. Department of Homeland Security ("DHS") and U.S. Customs and Border Protection ("CBP").

## I.  SUMMARY OF ARGUMENT

Plaintiffs oppose the motion of DHS and CBP for a blanket stay of proceedings pending a decision by the Joint Panel on Multidistrict Litigation ("MDL") to transfer this case to Washington, D.C. The requested stay is unnecessary, overbroad, and prejudicial to the ACLU's right to obtain a timely response to its Freedom of Information Act ("FOIA") request for records about an issue of tremendous current importance: the chaotic local implementation of President Trump's Executive Orders purporting to bar individuals from several predominantly Muslim countries from entering the United States.

This Court should exercise its discretion to deny the requested stay, first, because it will result in needless and prejudicial delay to ACLU's access to these important public records. FOIA's central purpose of assuring an informed citizenry and an accountable government is undermined when federal agencies are permitted to delay responding to requests or adjudicating a requester's right to records. Defendants seek just such a delay here.

Second, the stay cannot be justified by any harm to DHS and CBP. Their claim of potentially inconsistent adjudications is entirely conjectural and premature. Defendants identify no pending or anticipated ruling that pose a meaningful risk of inconsistency, and they ignore the factual differences between this case and the other FOIA cases they seek to transfer (all of which seek only local records). Moreover, the litigation events that are likely to occur before the MDL issue is decided – such as answering ACLU's Complaint and cooperating on a discovery plan – are not onerous, and are activities the government would be required to undertake even if its MDL motion is granted.

Third, Defendants have identified no substantial efficiencies to be gained by a stay. The activities likely to occur before the MDL motion is considered are minimal, and would need to

1

occur regardless of any JPML decision.  Moreover, the FOIA request in this case sought *only* records held by the San Francisco CBP Field Office.  Thus, the question of whether Defendants properly searched for and provided requested records will have to be addressed on a local basis, even if some pretrial activity is consolidated.  A stay will not aid judicial economy on that or any other anticipated issue.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Background on Local Implementation of the Executive Orders

The ACLU brought this FOIA lawsuit in order to obtain timely access to information of extreme importance, both in the San Francisco region and nationally.

On January 27, 2017, President Trump signed an Executive Order entitled "Protecting the Nation From Foreign Terrorist Entry Into the United States." *See* Complaint (Dkt. No. 1) at ¶ 2. Among other things, the order purported to halt refugee admissions and bar entrants from several predominantly Muslim countries from entering the United States.  Compl. ¶ 4.  News reports described Defendants' implementation of the Executive Order as "chaotic" and "total[ly] lack[ing] . . . clarity and direction." *Id.* ¶ 4.[1]  On March 6, 2017, President Trump issued another, identically titled, Executive Order after at least five lawsuits[2] resulted in emergency court orders enjoining implementation of various sections of the first Executive Order.  Compl. ¶¶ 2, 6.

Residents and their families in San Francisco, Utah, and Hawai'i have been personally affected by the orders,[3] and more than a thousand people demonstrated at San Francisco

---

[1] *See, e.g.*, Ryan Devereaux *et al.*, *Homeland Security Inspector General Opens Investigation of Muslim Ban, Orders Document Preservation*, THE INTERCEPT, Feb. 1, 2017, *available at* https://theintercept.com/2017/02/01/homeland-security-inspector-general-opens-investigation-of-muslim-ban-rollout-orders-document-preservation/.

[2] *Doe v. Trump*, No. C17-126, 2017 WL 388532 (W.D. Wash. Jan. 28, 2017); *Vayeghan v. Kelly*, No. CV 17-0702, 2017 WL 396531 (C.D. Cal. Jan. 29, 2017); *Tootkaboni v. Trump*, No. 17-CV-10154, 2017 WL 386550 (D. Mass. Jan. 29, 2017); *Aziz v. Trump*, No. 1:17-CV-116, 2017 WL 386549 (E.D. Va. Jan. 28, 2017); *Darweesh v. Trump*, No. 17 CIV. 480 (AMD), 2017 WL 388504 (E.D.N.Y. Jan. 28, 2017).

[3] *See, e.g.*, Michael D. Shear *et al.*, *Judge Blocks Trump Order on Refugees Amid Chaos and Outcry Worldwide*, N.Y. TIMES, Jan. 28, 2017, *available at* https://www.nytimes.com/2017/01/28/us/refugees-detained-at-us-airports-prompting-legal-challenges-to-trumps-immigration-order.html; Emma Brown *et al.*, *Refugees Detained at U.S. airports, including SFO, challenge Trump executive order*, SAN JOSE MERCURY NEWS, Jan. 28, 2017, *available at* http://www.mercurynews.com/2017/01/28/refugees-detained-at-u-s-airports-challenge-trumps-

OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS
4849-3169-7481v.3 0050033-000045

DAVIS WRIGHT TREMAINE LLP

International Airport when the first order took effect in January 2017. *See* Compl. ¶ 10.[4] The immigration policy debate surrounding the order has particular resonance in Northern California, Hawaii and Utah. San Francisco, a major international travel hub with a long history of taking in refugees, lies only a few hours from Manzanar War Relocation Center, the most notorious of the camps where Japanese Americans were, to this country's enduring shame, interned during the Second World War.[5] Utah's state culture prizes personal decency and compassion towards immigrants and refugees.[6] Hawai'i, the first state to challenge the second Executive Order, and among the most diverse states in the country, preserves its traditional value of welcoming visitors and strangers with an open heart, and has been defined by the continuous waves of immigrants who have built homes on its islands over generations.[7]

## B.     ACLU's FOIA Request

While the Executive Order remains enjoined, the public is still largely in the dark about CBP's actions, including its enforcement of the directive at San Francisco International Airport, the instructions given to officials at the San Francisco CBP Field Office, and the basis for their interpretation of the order. On February 2, 2017, Plaintiff submitted a FOIA request seeking records related to CBP's *local* interpretation and enforcement of the order. Compl. ¶¶ 1-3, 20-22 & Ex. A. The Request expressly *excluded* records held by CBP Headquarters. *Id.* ¶ 3, 21 & Ex.

---

executive-order/; Joe Fitzgerald Rodriguez, *Detainees released from SFO as thousands protest Trump refugee orders*, SAN FRANCISCO EXAMINER, Jan. 29, 2017, available at http://www.sfexaminer.com/detainees-released-sfo-thousands-protest-trump-refugee-orders/.

[4] Joe Fitzgerald Rodriguez, *Detainees released from SFO as thousands protest Trump refugee orders*, Jan. 29, 2017, SAN FRANCISCO EXAMINER, available at http://www.sfexaminer.com/detainees-released-sfo-thousands-protest-trump-refugee-orders/.

[5] Alexander Nazaryan, *75 Years Later, Internment of Japanese Remains Stain on American History*, NEWSWEEK, Feb. 15, 2017, *available at* http://www.newsweek.com/2017/02/24/manzanar-japanese-internment-camp-trump-extreme-vetting-556944.html.

[6] Brady McCombs, Mixed Reviews for Travel Ban in Refugee Friendly Utah, U.S. NEWS AND WORLD REPORT (crediting ASSOCIATED PRESS), Mar. 6, 2017, *available at* https://www.usnews.com/news/best-states/utah/articles/2017-03-06/revised-travel-ban-mostly-panned-in-refugee-friendly-utah

[7] Alan Neuhauser, *Hawaii Files First State Challenge to Trump's Travel Ban*, U.S. NEWS AND WORLD REPORT, Mar. 8, 2017, *available at* https://www.usnews.com/news/best-states/articles/2017-03-08/hawaii-is-first-state-to-challenge-trumps-new-travel-ban; *Hawai'i v. Trump*, No. CV 17-00050 DKW-KSC, 2017 WL 1011673 (D. Haw. Mar. 15, 2017); *Hawaii Resolution Calls For Creating Sanctuary State*, HONOLULU STAR ADVERTISER (crediting ASSOCIATED PRESS), Apr. 18, 2017, *available at* http://www.staradvertiser.com/2017/04/18/breaking-news/hawaii-resolution-calls-for-creating-sanctuary-state/

A at 9.  The FOIA request sought expedited processing, on the ground that there is a "compelling need" for these records under 5 U.S.C. § 552(a)(6)(E)(v)(II) because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity."  Compl., ¶ 23 & Ex. A, at p. 10-15.

CBP has not notified Plaintiff of a determination as to whether it will respond to the Request, not has it acknowledged ACLU's request for an expedited response.  *Id*. ¶¶ 28-32.  To date, Defendants have yet to provide a single record responsive to the request.  To ACLU's knowledge, CBP's San Francisco Field Office has yet to disclose any of the instructions its local officials were provided with respect to the Executive Order or any record explaining its interpretation of the order.

**C.      Procedural Background and Pending Proceedings**

ACLU filed its complaint on April 12, 2017.  It alleges Defendants violated FOIA by failing to (i) produce responsive records, (ii) state whether it will make records available, and (iii) to respond to ACLU's request for expedited processing.  Compl. ¶¶ 34-44.  On May 8, Defendants filed a motion with the JPML, seeking to transfer this case to the district court for the District of Columbia in order to coordinate pretrial proceedings with 12 other FOIA lawsuits (all filed in other districts, seeking different local records from Defendants).  Mot, at p. 2.  The 12 other cases were filed by separate ACLU affiliates in other jurisdictions.  Each involves different FOIA requests for local records held by different regional CBP offices.  None of the other 12 suits involves the records at issue in this lawsuit – *i.e.*, records held by the San Francisco CBP Field Office.

ACLU did not oppose CBP and DHS' request for an extension of time to respond to the Complaint, and Defendants' response is not due until July 2, 2017.  *See* Dkt. # 15.  No other conferences or hearings are currently on calendar, and no discovery has been served.  The only pending motion is the instant motion.

## II. DEFENDANTS HAVE NOT CARRIED THEIR BURDEN OF SHOWING THAT THIS ACTION SHOULD BE STAYED.

### A. The Pending MDL Motion Is Not A Sufficient Ground To Stay These Proceedings

A district court "should not automatically stay discovery, postpone rulings on pending motions, or generally suspend further rulings upon a [party's] motion to the MDL Panel for transfer and consolidation." *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997); *accord*, *Perry v. Luu*, 2013 WL 3354446, at *3 (E.D. Cal. July 3, 2013). Indeed, there is *no* requirement that a court stay litigation pending a JPML decision on a motion to transfer: such a motion "***does not affect*** or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." MDL Rule 2.1(d) (emphasis added); *Litchfield Co., LLC v. BP, P.L.C.*, 2010 WL 2802498, at *1 (D.S.C. July 14, 2010) ("A pending transfer motion before the MDL panel does not deprive the district court in which the action is then pending of jurisdiction over pretrial matters."); *Jozwiak v. Stryker Corp.*, 2010 WL 147143, *2 (M.D. Fla. Jan. 11, 2010). Accordingly, courts have denied requests for stays under the circumstances presented here. [8] *See e.g.*, *Sehler v. Prospect Mortgage, LLC*, 2013 WL 5184216, at *3 (E.D. Va. Sept. 16, 2013); *Sullivan v. Cottrell, Inc.*, 2012 WL 694825, at *4 (W.D.N.Y. Feb. 29, 2012); *St. Joe Co. v. Transocean Offshore Deepwater Drilling Inc.*, 774 F.

---

[8] Defendants cite distinguishable cases from this Court in which stays were granted based on circumstances that are not present here. *See Freitas v. McKesson Corp.*, No. C 11-05967, 2012 WL 161211, at *2 (N.D. Cal. Jan. 10, 2012) (plaintiff claimed that prejudice would result *only from transfer of the case to MDL*, and offered no prejudice arising from stay); *Sanborn v. Asbestos Corp.*, No. C 08-5260, 2009 WL 195922, at *2 (N.D. Cal. Jan. 27, 2009) (transfer to MDL proceeding that, for more than *20 years*, had handled claims arising from the same product at issue, where prejudice to plaintiffs would be "minimal" given that "a final decision by the MDL Panel is likely to be made soon"); *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998) (ordering stay that would "likely be brief" given that MDL panel had *already entered* a condition transfer order concerning the case); *Davis v. Pfizer, Inc.*, No. C 14-1204, 2014 WL 1599005, at *1 (N.D. Cal. Apr. 21, 2014) (ordering stay in product-liability action where stay would cause only "slight delay" and only prejudice contemplated was "degradation of memories or the loss of material evidence," rather than delayed disclosure of public records); *J.W. v. Pfizer, Inc.*, No. 13-CV-00318-YGR, 2013 WL 1402962, at *4 (N.D. Cal. Apr. 5, 2013) (ordering stay to prevent inconsistent rulings on questions of federal preemption where party opposing stay could point to "no tangible harm" arising from delay).

Supp. 2d 596, 601 (D. Del. 2011); *Barber v. BP, PLC*, 2010 WL 2266760, at *2 (S.D. Ala. June 4, 2010).

"The decision to grant or deny a temporary stay of proceedings pending a ruling by the MDL Panel on a motion to consolidate is discretionary." *Burns v. Gerber Products Co.*, 2012 WL 8251405, at *4 (E.D. Wash. Sept. 4, 2012), citing *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049, 1053 (N.D. Cal. 2004). That discretion is exercised in light of three factors: (1) the "potential prejudice to the non-moving party"; (2) any "hardship and inequity to the moving party if the action is not stayed"; and (3) "judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." *Burns*, 2012 WL 8251405, at *4 (quoting *Rivers*, 980 F. Supp. at 1360).

Each of these considerations is discussed below. None justifies a stay here.

**B.  A Stay Will Prejudice Plaintiffs By Delaying Access To Records Of Significant Public Interest Amid An Ongoing Controversy.**

The government's requested stay would prejudice Plaintiffs because it would undermine a central purpose of FOIA: ensuring records of public interest are produced ***promptly*** to enable citizens to learn about government conduct and to act on it at a time when public engagement would be effective. This case is a textbook example of the importance of timely disclosure, given the ongoing controversy and debate about the Executive Orders. *See* Compl. ¶¶ 5-11.

FOIA's "core purpose is to inform citizens about what their government is up to" so as to "ensure an informed citizenry," which is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Yonemoto v. VA*, 686 F.3d 681, 687 (9th Cir. 2012), *overruled in part on other grounds by Animal Legal Def. Fund v. FDA*, 836 F.3d 987 (9th Cir. 2016) (en banc). Because "disclosure, not secrecy, is the dominant objective of the Act," the statute presumes all agency records are public and places the burden on the government to justify withholding based on specific exemptions that must be narrowly construed. *Id.* at 687-88 (quotation omitted); *see* 5 U.S.C. § 552(a)(8)(A)(i) (presumption of openness).

The statute recognizes the importance of prompt disclosure by requiring agencies to respond to requests within 20 days, absent "unusual" or "exceptional" circumstances. 5 U.S.C. §

6

552(a)(6)(A)(i). "[U]nreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses." *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982). Legislative history shows "Congress intentionally set harsh time limits for agencies to respond to FOIA requests because it recognized that information is often useful only if it is timely." *Gilmore v. Dept' of Energy*, 33 F. Supp. 2d 1184, 1189 (N.D. Cal. 1998); *see also Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1089 (N.D. Cal. 2015) ("Congress was specifically concerned that agencies would delay in responding to requests"); *Martins v. USCIS*, 962 F. Supp. 2d 1106, 1127 (N.D. Cal. 2013) (recognizing "expeditious release of documents…furthers FOIA's core purpose of shed[ding] light on an agency's performance") (quotation omitted).

Moreover, agencies must expedite processing and respond "as soon as practicable" where, as here, a requester shows "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(i). "[E]xpedited processing of a FOIA request is a statutory right, not just a matter of court procedure." *Edmonds v. FBI*, 417 F.3d 1319, 1323 (D.C. Cir. 2005). Courts consistently require expedited disclosure in cases like this one that involve requests for documents about matters that are subjects of intense media scrutiny and ongoing public debate. For example, in *EPIC v. DOJ*, 416 F. Supp. 2d 30 (D.D.C. 2006), the court found that "given the great public and media attention that the government's warrantless surveillance program has garnered and the recent hearings before the Senate Judiciary committee, the public interest is particularly well-served by the timely release of the requested documents." *Id.* at 42. Likewise, in *ACLU v. DOD*, 2006 WL 1469418 (N.D. Cal. May 25, 2006), the court held ACLU had an urgent need for records about a government program to gather information on political protesters because "[g]etting the requested information quickly might be valuable to would-be protesters and opposition groups" to "help them decide how to express their political viewpoints," and, given the pending controversy over the program, delay also would harm "the media's interest in quickly disseminating breaking, general-interest news." *Id.* at *7-8. *See also Gerstein v. CIA*, 2006 WL 3462658, at *6 (N.D. Cal. Nov. 29, 2005) (expedited response appropriate where

DAVIS WRIGHT TREMAINE LLP

records concerned "an issue that is not only newsworthy, but was the subject of an ongoing national debate").

These principles apply here. ACLU sought expedited processing of its FOIA request in order to provide the public with information about how the San Francisco CBP Field Office read and implemented the Executive Order. Compl. ¶¶ 23-25. This has been, and continues to be, a hotly contested public issue. *Id.* ¶¶ 5-11. As noted above and in the Complaint, the local implementation has resulted in mass protests (including demonstrations at San Francisco International Airport), widespread media coverage, calls for action by elected officials, and extensive litigation. *Id.* Although the Executive Order is on hold, the legal and public policy debate surrounding its initial enforcement remains very much alive, and related litigation challenging the Orders remains pending in the Ninth Circuit.[9]

Defendants' request to delay this litigation is squarely at odds with FOIA's purpose and ACLU's statutory right to expedited access to the requested records. Moreover, Defendants fail to cite a single decision that delayed litigation about disclosure of public records in the midst of such an ongoing controversy. *See* Mot. at 3-6. Their discussion of prejudice does not cite any FOIA cases, only readily distinguishable lawsuits involving private disputes where there was no showing of an imminent public interest in the dissemination of government information.[10] ACLU, and the public, have an urgent need for the records at issue, so that its members, media organizations, community groups, and ordinary citizens can have the information necessary to participate in the ongoing debate over the Orders at a time when they can still influence public policy. *See EPIC*, 416 F. Supp. 2d at 42. Consequently, Plaintiff would suffer significant prejudiced if the action is stayed.

---

[9] *See, e.g., State of Hawaii, et al. v. Trump*, Ninth Circuit No. 17-15589; cases listed at Compl. ¶ 6. Underscoring the public interest in this matter, the Ninth Circuit's February 7, 2017 oral argument in *State of Washington v. Trump* has drawn more than 140,000 views on YouTube. *See* U.S. Court of Appeals for the Ninth Circuit, 17-35105, https://www.youtube.com/watch?v=RPOFowWqFGU.

[10] *See Davis*, 2014 WL 1599005 at *1 (products liability action); *J.W.,* 2013 WL 1402962 at *4 (same); *Freitas*, 2012 WL 161211 at *2 (same); *Sanborn*, 2009 WL 195922 at *2; *American Seafood, Inc. v. Magnolia Processing, Inc.*, 1992 WL 102762, at *1 (E.D. Pa. May 7, 1992) (antitrust lawsuit against catfish producer); *Good*, 5 F. Supp. 2d at 809 (fraud claim against insurer).

DAVIS WRIGHT TREMAINE LLP

### C. The Government Will Not Suffer Any Cognizable Hardship Absent A Stay

In recognizing a court's power to stay proceedings, the Supreme Court also cautioned that an applicant "for a stay must make out a ***clear case*** of hardship or inequity in being required to go forward, if there is ***even a fair possibility*** that the stay for which he prays will work damage to some one else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (emphasis added). Applying this limiting principle, the Ninth Circuit will deny a stay where the moving party failed to make a clear showing of hardship: "To be sure…. if the stay is vacated [moving party] must proceed toward trial in the suit in the district court, but being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

Here, Defendants fail to identify any real hardship they would suffer absent its proposed blanket stay, other than having to defend this action on a normal schedule. *See* Mot. at 5. They vaguely speculate "moving forward *could* also result" in conflicting rulings. *Id.* at 6 (emphasis added). But Defendants do not identify these potential conflicts, or explain why they are likely, let alone imminent absent a stay. They simply claim the agencies are also litigating requests for "identical or similar categories of records" from requesters other than Plaintiff. *Id.* at 1. This simply ignores that each of those other complaints has been brought by different plaintiffs and seeks different records. As discussed above, in this case ACLU's request seeks only locally-held records from the San Francisco CBP Field Office, and expressly excludes national or common records held at CBP Headquarters or elsewhere. Compl. ¶¶ 3, 21; Compl. Ex. A at 9. Thus, this case involves different factual and legal issues than the other pending actions. The inquiry in this case will focus on the factual circumstances surrounding CBP's local implementation of the Orders in the San Francisco Field Office, and the reasonableness of the searches for records held in that office. The other actions, by contrast, seek records about CBP's implementation of the Orders in other CBP field offices, and as a result will raise the reasonableness of searches conducted for different records held in different locations. It is impossible to know whether the lawsuits will raise any of the same claimed exemptions because each action seeks different records.

9

OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS
4849-3169-7481v.3 0050033-000045

Courts consistently reject stay requests founded on such mere conjecture. For example, in *Ramos v. Capital One*, 2017 U.S. Dist. LEXIS 32368 (N.D. Cal. Mar. 7, 2017), defendants claimed hardship from litigating related cases at the same time, but the court noted, "[a]side from conclusory assertions, Defendants have not provided any detail as to why simultaneous litigation of this case and [another] case that have substantial overlap in their factual and legal issues would cause a significant burden." *Id.* at *8-9. Given the vague showing, the court concluded that any such hardships would "weigh only slightly in favor of granting the stay and do not outweigh the possible prejudice to Plaintiff." *Id.* at *12. *See also In re Maxwell Techs., Inc.*, 2014 U.S. Dist. LEXIS 87955, at *5 (S.D. Cal. June 26, 2014) (denying stay litigation in light of related proceeding because moving party's claim of hardship was "speculative").[11]

The pendency of Defendant's MDL motion does not change this analysis. For example, in *Barber* – a case on similar procedural footing to this one – the court denied a motion to stay as "premature" when it was brought one month prior to an MDL transfer decision. The court found "the only tangible effect of entering a stay at this time would be to allow defendants a three-month reprieve after service of process before being required to answer the allegations brought by plaintiffs in the Complaint. Such a protracted delay appears both unnecessary and unwarranted." *Barber*, 2010 WL 2266760, at *2. Just as in this case, "there is no reason in the world why defendants cannot file responsive pleadings prior to the MDL's determination on the pending transfer and consolidation issues," because "[r]egardless of whether and where the MDL Panel ultimately transfers this action for consolidated and coordinated pretrial proceedings, defendants

---

[11] The cases Defendants cite are readily distinguishable because they involved tort claims where there was little or no dispute over the common issues that posed a serious risk of overlapping proceedings. *See Wilbanks v. Merck & Co., Inc.*, 2005 WL 2234071, at *1 (W.D. Tenn. Sept. 13, 2005) (stay granted where cases from same district raising similar jurisdictional issue had already been transferred to MDL panel and "hundreds, possibly thousands, of others that have been transferred or are awaiting transfer in other districts"); *Freitas*, 2012 WL 161211 at *2 (judicial economy justified stay where "[o]ver 100 cases involving allegations of harm resulting from the ingestion of medications containing" the same drug); *Namovicz v. Cooper Tire & Rubber Co.*, 225 F. Supp. 2d 582, 583 n.2 (D. Md. 2001) (stay granted where lawsuits were "filed on identical grounds seeking the same relief"); *In re Musha Cay Litigation*, 330 F. Supp. 2d 1364, 1365 (J.P.M.L. 2004) (granting unopposed request to consolidate arising "from the same underlying commercial transaction," not addressing any stay request); *In re Air Crash Near Kirksville, Missouri*, 383 F. Supp. 2d 1382, 1383 (J.P.M.L. 2005) (same).

OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS
4849-3169-7481v.3 0050033-000045

1 will need to file answers or responsive pleadings." *Id.* Given the limited activity likely to occur in
2 this case before the MDL motion is decided, Defendants cannot demonstrate any real harm
3 justifying their proposed blanket stay.

4 Because Plaintiff has demonstrated far more than a "fair possibility" of prejudice and the
5 government points to no hardship other than simply "being required to defend a suit," its request
6 should be denied. *Lockyer*, 398 F.3d at 1112.

7 **D.    A Stay Will Not Significantly Promote Judicial Economy**

8 Defendants' attempt to justify a blanket stay on grounds of judicial economy fail for
9 reasons largely set forth above. They argue, first, that stays are "typically" granted pending
10 motions to transfer to the JPML. Mot. at 2. This is overstated: as noted in Section A, courts
11 frequently deny – and certainly do not automatically grant – requests for stays merely because a
12 motion to transfer pretrial proceedings to the JPML is pending. Defendants' pending motion
13 "does not affect" this Court's pretrial jurisdiction. MDL Rule 2.1(d).

14 Next, Defendants argue a stay should be granted because the government "is coordinating
15 [CBP's] search for records responsive to all of the requests" filed by ACLU affiliates in this and
16 other FOIA actions around the country. Mot. at 4. While Defendants are certainly free to
17 coordinate their efforts from "CBP's headquarters in Washington, DC," *id.*, doing so will not
18 result in any particular judicial efficiencies. Again, ACLU's FOIA request in this case seeks
19 records held by CBP employees in the San Francisco Field Office, related to implementation of
20 the Executive Order at San Francisco International Airport and the other ports of entry under that
21 field office's control; records held at "CBP Headquarters" were expressly excluded from the
22 request at issue in this case. Compl. Ex. A, at p. 9. Transfer thus will not obviate the need for
23 Defendants to account in this litigation for the records held (or withheld) by CBP in San
24 Francisco, or the search for such records conducted in the San Francisco Field Office. The
25 requested stay will serve only to delay that accounting, and the public's access to these crucial
26 records.

27 It is telling that the only specific "inefficiency" Defendants identify is that "[a]bsent a stay,
28 Plaintiff may ask the Court to set a schedule for Defendants' search for, and potential release of,

11
OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS
4849-3169-7481v.3 0050033-000045

responsive information." Mot. at 4.  This argument is problematic, for several reasons.  <u>First</u>, CBP's concern that the court might "set a schedule" to begin searching for records is a tacit admission that Defendants have not yet done so – which would be a violation of their statutory obligation to process ACLU's FOIA request promptly.  5 U.S.C. § 552(a)(6)(A)(i), (E)(i).  A government agency should not be permitted to use a litigation stay to justify evasion of its basic FOIA obligations.  <u>Second</u>, Plaintiff has not yet asked the Court to set a schedule; granting a stay on that basis would, at best, be premature.  <u>Third</u>, were the Court to set such a schedule, it would not be a waste of judicial resources because it would only affect the FOIA request at issue in this case – which, again, only applies to *local* records.

Similarly, any other litigation activity likely to occur in this case before the MDL motion is decided – such as answering the Complaint and conferring on a joint discovery plan – would not be wasted effort even if this case were transferred by the JPML.  As noted above, these activities likely will impose little burden on the parties, and even less (if any) on this Court.  Given that the Court has not been asked to decide any motion (other than this one) or intervene in any discovery dispute (again, discovery has yet to begin), Defendants' request for a blanket stay is patently overbroad.  In light of the prejudicial delay in public access that would result from a stay, and the absence of any meaningful efficiencies to be achieved, the stay sought by Defendants is unwarranted.

### III.   CONCLUSION

For all of the foregoing reasons, ACLU respectfully requests that the Court deny Defendants' motion to stay the proceedings.

DATED this 24 May 2017.

        Respectfully submitted,
        DAVIS WRIGHT TREMAINE LLP

        By: */s/ Thomas R. Burke*
          Thomas R. Burke
          Attorneys for Plaintiffs
          AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, AMERICAN CIVIL LIBERTIES UNION OF HAWAIʻI, AND AMERICAN CIVIL LIBERTIES UNION OF UTAH

# PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California, in the office of a member of the bar of this court, at whose direction the service was made. I am over the age of eighteen (18) years, and not a party to or interested in the within-entitled action. I am an employee of DAVIS WRIGHT TREMAINE LLP, and my business address is 865 S. Figueroa Street, Suite 2400, Los Angeles, CA 90017.

I caused to be served a copy of the following document: **OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS** I caused the above document to be served on each of the persons listed below by the following means:

Matthew J. Berns, Esq.
Chetan A. Patil, Esq.
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
Tel: (202) 305-4968
Fax: (202) 616-8470
Email:   chetan.patil@usdoj.gov
              matthew.j.berns@usdoj.gov
*Counsel for Defendants U.S. Department of Homeland Security and U.S. Customs and Border Protection*

☑ I enclosed a true and correct copy of said document in an envelope and placed it for collection and mailing with the United States Post Office on May 24, 2017, following the ordinary business practice.

☐ I enclosed a true and correct copy of said document in an envelope and placed it for collection and mailing via Federal Express on May 24, 2017, for guaranteed delivery on [date of delivery], following the ordinary business practice.

☐ I consigned a true and correct copy of said document for facsimile transmission on May 24, 2017.

☐ A true and correct copy of said document was emailed on May 24, 2017.

I am readily familiar with my firm's practice for collection and processing of correspondence for delivery in the manner indicated above, to wit, that correspondence will be deposited for collection in the above-described manner this same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 24, 2017, at Los Angeles, California.

/s/Lina Pearmain
Lina Pearmain